UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA        )
                                )
          v.                    )        CRIMINAL NO. 04-10135-GAO
                                )
FEDERICO NIVAR                  )

MOTION TO SUPPRESS FRUITS OF
ILLEGAL SEARCH AND SEIZURE AND
MOTION TO SUPPRESS STATEMENTS

        Defendant, Federico Nivar, respectfully moves that this

court suppress from evidence items, including alleged heroin and

cocaine, seized from his home, as well as any and all statements

made by him on April 7, 2004, any and all fruits of those

statements, and any and all fruits of his arrest on April 7,

2004.

        As grounds for this motion, defendant states that the

evidence was obtained in violation of his rights under the Fourth

Amendment and Fifth Amendments to the Constitution.

STATEMENT OF FACTS[1]

        On April 7, 2004, DEA agents arrested Mr. Nivar, pursuant to

a complaint filed in this Court.  The agents had just concluded

_____

        1 This statement is based largely on undersigned counsel's
review of discovery received to date and her expectation of what
evidence at a suppression hearing would show.  Undersigned
counsel reserves the right to supplement or amend the motion as
needed.  In addition, undersigned counsel reserves the right to
submit an affidavit of defendant at a later time.  The affidavit
has not yet been finalized due to the language barrier in this
case.

an undercover purchase of alleged drugs from Mr. Nivar's co-defendant Thomas Scola.  The agents never had spoken directly to Mr. Nivar, never conducted any negotiations with him, and never observed him in possession of illegal substances.  Mr. Scola never had mentioned Mr. Nivar by name during any of his conversations or meetings with the undercover agent.  Det. Tr. 28-29.

After his arrest, Mr. Nivar was taken to the Wakefield police station.  Police allegedly found a small amount of heroin in the police car after Mr. Nivar was removed.

At the station, a Spanish-speaking officer told him that he had a right not to speak with the agents and that, if he could not afford a lawyer one would be provided to him.  The agent did not explain that anything that Mr. Nivar said could be used against him, nor did he tell Mr. Nivar that he had a right to have a lawyer present during questioning.  Affidavit of Defendant, attached hereto as Exhibit A.

The agent told Mr. Nivar that if he did not cooperate, he would be imprisoned for 20 to 40 years, and that his girlfriend, who was nine months pregnant would be taken to jail.  Id.

Concerned about his girlfriend and unborn child, Mr. Nivar agreed to talk to the officer.  Id.  It appears that no written Miranda waiver was signed.

-2-

At the officers' request, Mr. Nivar attempted to arrange a meeting at his home. On their way to the apartment, the agents stopped and one asked Mr. Nivar about the apartment's layout and its occupants. The agent also asked, "Don't you have weapons there?" Mr. Nivar replied in the negative. Id.

When Mr. Nivar asked if the officers were going to search the apartment, the agent replied that "they were only going to check to see if other people were there." Mr. Nivar was given a form in English, which he could not understand. At the officers' direction, he signed it. The form purported to give consent to search the apartment. Mr. Nivar believed, however, that he only was allowing the officers to make sure that no one other than his girlfriend was in the apartment. Id.

At some point after arriving at the apartment, the officers searched it. Mr. Nivar and his girlfriend both protested, but the officers insisted that they had the right to search the house. Id. The police ultimately found more than 300 grams of heroin, seven grams of cocaine, and $54,000 in cash inside a ceiling vent in the apartment. From the time of his arrest until the time that the search was completed, a period of more than seven hours, Mr. Nivar remained in handcuffs. Id.

ARGUMENT

Defendant submits that the evidence obtained as a result of the arrest, interrogation, and search, including any fruits as well as defendant's statements, should be suppressed.  As grounds, defendant submits:

1.  Police did not have probable cause to arrest Mr. Nivar.

2.  The police conducted a warrantless search of Mr. Nivar's apartment, without probable cause, and without Mr. Nivar's valid consent.

3.  Any consent that Mr. Nivar gave was not voluntary. See Schneckloth v. Bustamonte, 412 U.S. 218 (1973); Florida v. Royer, 460 U.S. 491, 507 (1983) (plurality opinion) (consent given during unlawful detention was invalid).

4.  Assuming arguendo that Mr. Nivar provided voluntary consent for a cursory protective sweep of the apartment, the agents exceeded the scope of that consent.

5.  Any evidence obtained was the fruit of an unlawful seizure of defendant and/or search of his apartment.

6.  Any statements allegedly made by defendant were obtained in violation of Miranda v. Arizona, 384 U.S. 436 (1966), and were involuntary.

7.  Any statements allegedly made by Mr. Nivar were fruits of the unlawful police conduct.  Wong Sun v. United States, 371 U.S. 471 (1963).

-4-

Since none of the actions of the police was supported by a warrant, the government has the burden of showing that the challenged police conduct was lawful.  <u>United States v. Cruz Jimenez</u>, 894 F.2d 1, 6 (1st Cir. 1990).

I.   THE ARREST WAS UNLAWFUL BECAUSE THE POLICE LACKED PROBABLE
     CAUSE.

Mr. Nivar was arrested without probable cause.  At the time of his arrest, the agents had not purchased drugs from him, had not seen him in the possession of drugs.  He had been observed in the vicinity of a number of drugs transactions between Mr. Scola and an undercover agent and had been seen with Mr. Scola, but never had participated.  On the date of his arrest, he was seen leaving his apartment about a half hour before Mr. Scola was to meet the undercover agent.

Mr. Nivar's presence in the vicinity of the drug transactions, without more, does not amount to probable cause sufficient to justify an arrest.  Therefore, all of the fruits of the arrest, including his statements and the evidence seized or observed, should be suppressed.

II.  THE SEARCH OF MR. NIVAR'S APARTMENT WAS UNLAWFUL.

A.  Mr. Nivar did not Provide Voluntary Consent.

The government bears the burden of showing that any consent claimed as justification for a search was given voluntarily.  <u>Bumper v. North Carolina</u>, 391 U.S. 543, 548 (1968).

-5-

> Voluntariness turns on a number of factors, including
> the person's 'age, education, experience, intelligence,
> and knowledge of the right to withhold consent.' <u>United
> States v. Barnett</u>, 989 F.2d 546, 555 (1st Cir. 1993).
> The court can also consider 'whether the consenting
> party was advised of his or her constitutional rights
> and whether permission to search was obtained by
> coercive means or under inherently coercive
> circumstances.' <u>Id</u>.

<u>United States v. Coraine</u>, 198 F.3d 306, 309 (1st Cir. 1999).

Here, those factors weigh against a finding of voluntary consent. Mr. Nivar, who does not speak English, was confronted by a DEA agent, told that he would face a lengthy prison sentence and that his girlfriend, who was nine months pregnant, would be arrested if he did not cooperate. He was not told of all of his constitutional rights, and he was misled as to the scope of the search and its purpose. The circumstances -- with Mr. Nivar in police custody, handcuffed, and without access to a lawyer -- were inherently coercive.

Finally, Mr. Nivar's consent was tainted by the prior illegal actions of the police. <u>See</u> <u>Florida v. Royer</u>, 460 U.S. 491, 507 (1983) (plurality opinion).

> B.  The Police Exceeded the Scope of any Consent Provided
>     by Mr. Nivar.

The agents led Mr. Nivar to understand that they only intended to conduct a protective sweep of the apartment, in order to determine whether any other people were there. Instead, they

conducted a full-blown search that included a ceiling vent where drugs allegedly were discovered.

"The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of "objective" reasonableness -- what would the typical reasonable person have understood by the exchange between the officer and the suspect?" Florida v. Jimeno, 500 U.S. 248, 250 (1991). "The scope of a search is generally defined by its expressed object." Id.

Here, the "expressed object" of the search was a determination of the number of people present in the apartment, not a search for drugs or contraband.   The ceiling could not be encompassed by Mr. Nivar's consent. Cf. United States v. Irizarry, 673 F.2d 554 (1st Cir. 1982) (reversing denial of suppression motion where search above displaced ceiling panel exceeded scope of protective sweep after suspect was arrested). Therefore, the items seized during the search of the apartment should be suppressed.

III. MR. NIVAR'S STATEMENTS SHOULD BE SUPPRESSED.

   A.   Mr. Nivar was not Informed of all of his Rights under Miranda v. Arizona, 384 U.S. 436 (1966).

The prosecution may not use statements obtained through custodial interrogation of a defendant unless it demonstrates that the defendant was informed of his right to remain silent, that anything he says can be used against him in court, that he

has the right to have a lawyer present during questioning, and that a lawyer will be provided for him if he cannot afford a lawyer. Miranda v. Arizona, 384 U.S. 436, 444, 479 (1966).

It is beyond dispute that defendant was in custody on April 7, 2004. It also is beyond dispute that he was interrogated. Thus, the government bears the burden of proving that defendant was informed of his rights under Miranda. If the government fails, the statements must be suppressed.

B. Defendant did not Knowingly, Intelligently and Voluntarily Waive his Rights.

Even if the government can prove that defendant was informed of his rights, the statements still must be suppressed unless the government can show by a preponderance of the evidence that defendant knowingly, intelligently, and voluntarily waived those rights. Colorado v. Connelly, 479 U.S. 157, 168 (1986); Miranda, 384 U.S. at 444.

> The inquiry has two distinct dimensions. . . . First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

Moran v. Burbine, 475 U.S. 412, 421 (1986) (citations omitted).

-8-

Of course, if defendant was not informed of his rights, he cannot possibly have waived them knowingly.  Moreover, "a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained."  <u>Miranda</u>, 384 U.S. at 475.

"The question is not one of form, but rather whether the defendant <u>in fact</u> knowingly and voluntarily waived the rights delineated in the <u>Miranda</u> case."  <u>North Carolina v. Butler</u>, 441 U.S. 369, 373 (1979) (emphasis added).

The circumstances indicate that any waiver Mr. Nivar made was not voluntary.  The waiver occurred after he was threatened with a long sentence, told that his pregnant girlfriend would be arrested if he did not cooperate and kept in handcuffs for hours.

C.  The Statements were not Made Voluntarily.

"The voluntariness of an admission depends on 'whether the will of the defendant [was] overborne so that the statement was not his free and voluntary act, and that question [is] to be resolved in light of the totality of the circumstances.'"  <u>United States v. Jackson</u>, 918 F.2d 236, 241 (1st Cir. 1990), quoting <u>Bryant v. Vose</u>, 785 F.2d 364, 367-68 (1st Cir. 1986).  The burden is on the government to prove voluntariness by a preponderance of the evidence.  <u>Jackson</u>, 918 F.2d at 241.

A confession extracted by overbearing a suspect's will through threats, violence, direct or implied promises, or the exertion of improper influences is not voluntary. <u>Id</u>. at 241-242. <u>Cf</u>. <u>United States v. Burns</u>, 15 F.3d 211, 217 (1st Cir. 1994) (statements not involuntary where defendant never was promised that he would not be arrested if he cooperated and setting of interrogation was not coercive).

The fact that this case does not present the type of "gross abuses," such as beatings, that have resulted in finding confessions to be involuntary does not render the statements admissible. <u>See</u> <u>Mincey v. Arizona</u>, 437 U.S. 385, 401 (1978). The circumstances presented here, especially when combined with the failure to read defendant all of his rights, demonstrate that the statements made by defendant on April 7, 2004 were not made voluntarily.

Defendant reserves the right to amend or supplement this motion in response to the government's reply.

<u>REQUEST FOR EVIDENTIARY HEARING</u>

_____Defendant requests an evidentiary hearing on this motion.

                         FEDERICO NIVAR
                         By his attorney,

                         /s/ Miriam Conrad

                         Miriam Conrad
                            B.B.O. # 550223
                         Federal Defender Office
                         408 Atlantic Ave. 3rd Floor
                         Boston, MA  02110
                         Tel: 617-223-8061

February 14, 2005