# EXHIBIT

# A

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| v. | ) CRIMINAL NO. 04-10135-GAO |
| FEDERICO NIVAR | ) |

### AFFIDAVIT OF DEFENDANT

1. I am the defendant in the above-captioned case.

2. On April 7, 2004, I was arrested by DEA agents and taken to the Wakefield police station. A Spanish-speaking officer told me that I had a right not to speak with them, and that, if I could not afford a lawyer, one would be provided to me. He did not tell me that what I said could be used against me in court. He told me that if I did not cooperate, I would be sent to prison for 20 to 40 years and my girlfriend, who was nine months pregnant at the time, would be taken to jail.

3. The officer did not tell me that I had a right to have a lawyer present me during questioning. I thought the right to a lawyer did not apply until I went to court.

4. I was worried about my girlfriend and unborn baby, and agreed to talk to the officers.

5. After I made a phone call at the officers' request to arrange a meeting at my home, I asked the officer what would happen. The officer said they wanted to got to the apartment for the meeting. I told him that the apartment was my girlfriend's.

6. On the way to the apartment, we stopped at a parking lot. The officer asked me who was at the apartment and how it was laid out. He also said, "Don't you have weapons there?" I told him that I did not.

7. I asked the officer if they were going to search the apartment and he said they were only going to check to see if other people were there. He told me to sign a paper, written in English, which I could not understand. I signed it. I believed that I was only giving the officers permission to enter the apartment and to make sure no one other than my girlfriend was there. I did not believe that I was giving them permission to search the apartment. I did not intend to give them permission to search the apartment.

8. About one hour after we arrived at the apartment, the officers began to search the apartment.

9. Several times, I protested that I had not given them permission to search the apartment. My girlfriend also

        objected. The officers continued the search. They said they had the right to search the house.

10. At no time did I give knowing and voluntary consent for a search of my apartment. At no time did I consent to a search of the ceiling. I was in handcuffs from the time that I was arrested through the completion of the search, a period of more than seven hours.

The above is true to the best of my knowledge.

Signed under the pains and penalties of perjury this \_\_\_\_th day of December, 2004.

*Federico Nivar*
Federico Nivar