UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 04-10135-GAO |
| | ) | |
| FEDERICO NIVAR | ) | |
| | ) | |

FEDERICO NIVAR'S SENTENCING MEMORANDUM

The defendant Federico Nivar respectfully submits this Memorandum in support of his request that the Court sentence him to sixty months. In Part I below, he requests that the Court sentence him only on the basis of the cocaine to which he pled guilty, and not include in his guideline calculations any drugs constituting "relevant conduct." In part II below, he asks the Court to impose a sentence below the range which would result from application of the advisory federal sentencing guidelines, pursuant to 18 U.S.C. § 3553.

I. Mr. Nivar should be sentenced for having conspired to distribute 170 grams of heroin.

A. Mr. Nivar should not be credited with additional heroin as relevant conduct.

On May 16, 2006, Mr. Nivar pled guilty to conspiring to distribute and possess with intent to distribute heroin. At the plea hearing, counsel stated that the defendant was "admitting that [he] was in a conspiracy with Mr. Scola and – according to the indictment, which – for which he is responsible for 170 grams of heroin." (Transcript of Plea hearing p. 5).[1]

---

[1]Counsel arrived at the amount of 170 grams by adding 105.57 grams, the amount from the thirteen sales that Scola made to the undercover officer, (see Presentence Report p.5), 13.7 grams, the amount seized from the police car in which Mr. Nivar was transported after his arrest on April 7, 2004 (Report p. 9), and the amount that counsel understood had been seized from Mr. Nivar's residence. Counsel has since learned from Probation that there are additional drug certifications which she apparently did not receive from the prosecutor in discovery which increase the amount of heroin seized from Mr. Nivar's residence. Whether Mr. Nivar is accountable for 170 grams, as counsel stated at the time of his plea, or 339 grams, as

In the Presentence Report, Mr. Nivar's post-arrest statements are set out as follows:

> Nivar admitted supplying Scola regularly with heroin. Nivar also stated to the agents that his source of supply for heroin was a Hispanic male of Dominican descent known to him as Alex Zapata. Nivar stated that he would purchase $5,000 worth of heroin from Zapata. Nivar stated that he would sell approximately ten fingers (100 grams) of heroin per week. Nivar stated that he had known Zapata for approximately five years, and had been purchasing heroin from Zapata for approximately seven to eight months.

Presentence Report, p. 6, paragraph (22).

On the basis of these alleged statements, the Presentence Report states that Mr. Nivar is responsible for an additional 2,400 grams of heroin as relevant conduct. Report, p. 9, paragraph (33).

Mr. Nivar should not be credited with the additional heroin for sentencing purposes. First, the statements he made were not reliable. At the time he made the statements, Mr. Nivar had just been arrested. He was attempting to "cooperate" with agents in order to help himself. The officers who were interrogating him suggested that he could improve his situation by making a controlled buy with his source. Mr. Nivar's statements were the product of his trying to exaggerate his importance and his potential usefulness to the agents. It is notable that Mr. Nivar's subsequent attempts to contact Mr. Zapata and arrange a buy were unsuccessful.

If Mr. Nivar were sentenced on the basis of the amount of cocaine he pled guilty to conspiring to possess with intent to distribute, 170 grams, his base offense level would be 26, and with three points off for acceptance of responsibility, his total offense level would be 23,

---

Probation has calculated in the Presentence Report, (see Report page 9), makes no difference in Mr. Nivar's guidelines calculations. According to the Drug Quantity Table in U.S.S.G. §2D1.1, between 100 and 400 grams of heroin corresponds to level 26.

with a range of 46-57 months. Since he is subject to a five year minimum mandatory sentence under 21 U.S.C. § 841 (b) (1) (B) (i), the Court should sentence him to sixty months.

    B. <u>Mr. Nivar should not be sentenced for cocaine as relevant conduct</u>.

The Presentence Report, Page 6, paragraph (22) states that at the time of his arrest Mr. Nivar told the police that he had introduced four or five people to "Alex Zapata," the source of his heroin, to purchase kilogram amounts of cocaine, and that he "brokered" approximately 25 cocaine deals in this fashion. Mr. Nivar is then credited with 25 kilograms of cocaine as relevant conduct, which has the effect of increasing his base offense level from 32 to 34.

The cocaine should not be counted as relevant conduct. First, for the reasons stated above in Part A, the statements Mr. Nivar made are not reliable. Second, the cocaine represents a separate conspiracy from the heroin conspiracy charged. Under U.S.S.G. § 1B1.3, Note 9(B), offenses are to be counted as relevant conduct if they are "sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." Factors to be considered are the degree of similarity of the offenses, the regularity of the offenses, and the time interval between the offenses.

Courts that have considered this question have ruled that the "essential components of the § 1B1.3 (a) (2) analysis are similarity, regularity, and temporal proximity." *United States v. Hahn*, 960 F.2d 903 (9th Cir. 1992); *United States v. Mullins*, 971 F. 2d 11138, 1144-1146 (4th Cir. 1994) (following *Hahn*); *United States v. Bethley*, 973 F.2d 396 (5th Cir. 1992); *United States v. Sykes*, 7 F.3d 1331, 1336-1338 (7th Cir. 1993) (following *Hahn*); *United States v. Roederer*, 11 F. 3d 973, 979-980 (10th Cir 1993) (same).

"Temporal proximity" between the cocaine conspiracy and the heroin conspiracy cannot be established. Mr. Nivar is charged with a heroin conspiracy dated from about December, 2003 to about April, 2004, a five-month time span. In contrast, the time frame in which the alleged cocaine deals took place *is not stated anywhere* in the DEA-6 detailing Mr. Nivar's statements. Mr. Nivar stated that he knew Mr. Zapata for five years, so it is likely that any cocaine deals took place well outside the time of the charged heroin conspiracy. With regard to similarity, in the heroin conspiracy, Mr. Zapata supplied Mr. Nivar with drugs, while with regard to the cocaine, Mr. Nivar never received any drugs at all, but allegedly simply introduced buyers to Mr. Zapata.

The Addendum to the Presentence Report states that the "small amount" of cocaine found in Mr. Nivar's residence supports the inference that the cocaine was "derived from Zapata" and the inference that Mr. Nivar's cocaine dealings were close in time to the heroin conspiracy. This argument is unsound. First, according to Mr. Nivar's own admissions, *he never received any cocaine from Mr. Zapata*. Second, the amount of cocaine, 9.5 grams, is very small and does not support an inference of drug dealing.

If the cocaine is not counted as relevant conduct, (but the heroin is counted as relevant conduct), then 2,400 grams of heroin could conceivably be attributed to the defendant. Thus, the defendant's base offense level would be 32, not 34. His total offense level after acceptance of responsibility would be 29 and his guideline imprisonment range would be 87 to 108 months.

 II. <u>The Court should depart downward from the advisory sentencing guidelines based on the considerations in 18 U.S.C. §3553.</u>

   A. <u>The need "to protect the public from further crimes of the defendant" (§ 3553 (a) (2) (C)).</u>

Mr. Nivar has an ICE detainer lodged against him and will be deported after finishing his sentence. He has family, his mother and children, in the Dominican Republic. Mr. Nivar has never faced the type of sentence before that he does in this case. He understands that he may not return to this country, and he does not intend to. He wishes only to return to his country and see his family, and work to support them in his own country.

>   B.  <u>The need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense (§ 3553 (a) (2) (A))</u>.

A sentence of sixty months satisfies the above concerns. Mr. Nivar has been incarcerated since April 7, 2004 at the Plymouth County Correctional Facility in Plymouth, Massachusetts. It is well-known that federal inmates at Plymouth serve "hard time" there: the inmates do not go outside for recreation; there are no contact visits with friends or family; visits are of extremely limited duration; there are no educational opportunities; federal inmates may not work; there are no programs; and the medical unit is notoriously bad. In addition, because of his status as an illegal alien, any additional time Mr. Nivar must serve will be longer and more difficult than if he were a citizen: as a deportable alien he will be housed in a higher security facility than he might otherwise be and he will not be eligible for a half-way house program at the end of his sentence. Finally, after serving his sentence he will undoubtedly spend additional months in ICE custody awaiting deportation.

>   C.  <u>The nature and circumstances of the offense and the history and characteristics of the defendant (§ 3553 (a) (1))</u>.

Mr. Nivar is a forty-six year old native of the Dominican Republic. He is a physically diminutive man who speaks in a quiet, hesitant manner. He has lived in the United States since

1989 as a legal resident. This is his first incarceration. When discussing the case with counsel, and the potential length of his sentence, Mr. Nivar has frequently broken down in tears. Mr. Nivar is in criminal history category I. He has no crimes of violence on his criminal record, nor are there any allegations that there was any violence, threats of violence, or weapons associated with the drug dealing he engaged in.

Prior to Mr. Nivar's making statements to the police, the only evidence the police had concerning Mr. Nivar's drug dealing was that he would give Mr. Scola small amounts of heroin to sell. Mr. Nivar's actions were not those of a "major drug dealer" who was trafficking in large quantities of drugs, rather, he was acting as the middleman between a supplier and a small-time street-level dealer.

Mr. Nivar has expressed great concern to counsel about the welfare of his family in the Dominican Republic. He has three daughters there who live with his mother, who is in poor health. He has always provided them with financial support and has been extremely anxious over their fate since his incarceration.

III. Conclusion

For the reasons set out in Part I, A above, Mr. Nivar asks this Court to find that he should be sentenced only for the amount of heroin to which he pled guilty, and sentence him to sixty months. In the alternative, for the reasons set out in Part B, he asks that the Court not credit him with cocaine as relevant conduct, and calculate his guideline range as 87 to 108 months. For the reasons set out in Part II, he asks the Court to sentence him to sixty months.

                                            FEDERICO NIVAR
                                            By his attorney,

                                            /s/ Page Kelley
                                            Page Kelley
                                              B.B.O. #548237
                                            Federal Defender Office
                                            408 Atlantic Avenue, 3rd Floor
                                            Boston, MA  02110
                                            Tel: 617-223-8061

August 31, 2006

## CERTIFICATE OF SERVICE

     I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on September 1, 2006.

                                            /s/ Page Kelley
                                            Page Kelley